JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Plaintiff-appellant Kurt Anderson appeals from a common pleas court order granting summary judgment in favor of his employer, Maines Paper and Food Service, Inc., on his intentional tort claim. He asserts that the court erred by granting judgment for Maines and by denying his motion to strike certain evidence Maines submitted in support of its motion for summary judgment. We find that genuine issues of material fact precluded judgment for Maines. Therefore, we reverse the trial court's judgment and remand for further proceedings.
 {¶ 2} Anderson's complaint was filed March 10, 2004 and named as defendants Maines, St. Paul Fire Marine Insurance Co., Allstate Insurance Company, and various John Doe employers and insurers. The complaint asserted that Anderson was employed by Maines as a truck driver and delivery person for food products and supplies. As he was making a delivery at approximately 4:15 a.m. on August 30, 2002 at a Burger King restaurant in New Philadelphia, Ohio, he claimed his load shifted or fell, causing him to fall off the back of the truck and sustain serious injuries. Among other things, he claimed his fall was caused by improper loading or overloading the trailer, and that Maines was aware of this and required him to work under these conditions knowing that injury was substantially certain to occur. He sought damages from Maines. He also sought to recover under Maines' policy of insurance with St. Paul and his own insurance policy with Allstate. *Page 4 
 {¶ 3} Maines and St. Paul answered jointly; Allstate answered and cross-claimed against Maines and St. Paul and counterclaimed against Anderson.
 {¶ 4} Both Maines and St. Paul filed motions for summary judgment on December 15, 2005. In its motion, Maines asserted that it was not aware that Anderson was exposed to a dangerous condition, it was not substantially certain that Anderson would be injured, and Maines did not require Anderson to perform any dangerous activity. In support of its motion, Maines attached deposition testimony from Anderson, Dennis Kee, Maines' director of operations, and Mark Chaloupka, the transportation manager at Maines, as well as an affidavit from a Calah Anderson, copies of various receipts signed by Anderson acknowledging receipt of various handbooks and a copy of Maines' driver's handbook.
 {¶ 5} Anderson filed a brief in opposition supported by the deposition testimony of numerous Maines employees (including Anderson himself), his own affidavit and an affidavit from his liability expert, Robert Reed, copies of documents received from Maines during discovery, and a copy of a memorandum to Maines' warehouse and transportation associates dated October 8, 2002. Maines replied citing additional deposition testimony as well as a letter report from its liability expert, Sean A. Doyle.
 {¶ 6} On October 26, 2006, the court issued its journal entry and opinion granting both Maines' and St. Paul's motions for summary judgment. The court determined that Anderson had conducted a routine inspection of his trailer load *Page 5 
when he arrived at work on the day of his injury and determined that the trailer was improperly loaded, but he did not obtain assistance from warehouse personnel in redistributing his load or contact a supervisor, although he had done so on other occasions. Instead, he left to begin his deliveries, contrary to his training and the company's established safety procedures. Accordingly, the court found that Maines could not have been aware of any dangerous condition that day, and Anderson could not establish the first element of a cause of action for intentional tort. The court further held that St. Paul's liability was derived from Maines', and if Maines was not liable, then St. Paul could not be liable either. Accordingly, the court granted both Maines' and St. Paul's motions for summary judgment and determined there was no just cause for delay.
 {¶ 7} We review the trial court's decision to grant summary judgment de novo, applying the same standard of review the trial court applied.Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336. "In order to obtain summary judgment, the movant must show that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party." Id.
 {¶ 8} The parties agree that, "in order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his *Page 6 
employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, 118.
 {¶ 9} Anderson asserts that there is a genuine issue of material fact whether Maines knew that its trailers were regularly overloaded so that drivers did not have room to stand safely on the back of the trailer and unload at their first stop. He claims that drivers complained about overloading, but "the practice did not stop."
 {¶ 10} There is evidence that Maines knew that trailers were loaded so that there was not enough room for the driver to stand at the end of the truck to unload. Dispatcher Vincent Rodia testified that he heard complaints about how the trucks were loaded every night. Routing supervisor Michael Hrusovsky testified that he had received a "handful" of complaints from drivers that the trucks were overloaded. Warehouse supervisor Gary Kuchta testified that he had received complaints that the drivers had not been given enough room in the back of the truck to unload safely. Mark Chaloupka, the transportation manager, testified that drivers voiced complaints to him about how trailers were loaded roughly once or twice a week. *Page 7 
Dennis Kee, the director of operations, said that approximately once a month he received a complaint from a driver about how a truck was loaded. This testimony is sufficient to create a genuine issue of fact whether Maines was aware that its warehouse regularly loaded trucks in an unsafe manner.
 {¶ 11} There is also evidence that Maines knew that injuries were substantially certain to occur if trailers were loaded so that the driver did not have sufficient room to stand to unload at his first stop. Warehouse supervisor Gary Kuchta testified that the biggest danger was that the driver would fall out and get hurt when he landed. Warehouse manager Jim Earney acknowledged that this was "common sense." Dennis Kee testified that a trailer is approximately five feet high, and "anyone could get hurt falling from five feet." This testimony is sufficient to create a genuine issue of fact whether such loading practices were substantially certain to result in injury to drivers.
 {¶ 12} The most heavily disputed issue in this case is whether Maines required drivers to take unsafe loads, knowing they were unsafe. There was considerable testimony that warehouse personnel would reload a trailer which the driver believed to be unsafe. However, two witnesses, Mitchel Hoskins and Vincent Rodia, testified that warehouse personnel responded inconsistently to requests to reload a trailer; sometimes they would rearrange a load and sometimes they would not. Furthermore, the drivers' practical concerns about keeping to schedule and timely completing their routes arguably made this solution to the problem inadequate, if not *Page 8 
disingenuous. Some drivers testified that reloading took too much time, so they would just "deal with it."
 {¶ 13} We find that there are genuine issues of material fact whether Maines was aware that trailers were being overloaded, and whether Maines was aware that drivers were substantially certain to be injured by this practice, and whether Maines' stated policy of reloading a poorly loaded trailer effectively required drivers to work under dangerous conditions. These issues precluded the entry of judgment for Maines. Accordingly, we must reverse the judgment of the trial court and remand for further proceedings.
 {¶ 14} In his second assignment of error, appellant contends that the trial court erred by denying his motion to strike the expert witness's letter attached to Maines' reply brief in support of summary judgment. We presume that the trial court considered only admissible evidence in ruling on the summary judgment motion. Appellant has not demonstrated that the court relied on the expert letter in rendering its decision. In reviewing this matter de novo, this court also has not considered the expert letter. Accordingly, appellant was not prejudiced by this ruling. See Barker v. Strunk, Lorain App. No. 06CA8939, 2007-Ohio-884.
 {¶ 15} This cause is reversed and remanded to the common pleas court for further proceedings consistent with this opinion.
It is ordered that appellant recover from appellee costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 9 
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 FRANK D. CELEBREZZE, JR., A.J., and MARY EILEEN KILBANE, J., CONCUR *Page 1